UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**

| | | |
|---|---|---|
| GEICO MARINE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Case No. 5:19-cv-44-JMH |
| V. | ) ) | |
| CHARLES MONETTE, | ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) | |

\*\* \*\* \*\* \*\* \*\*

This matter comes before the Court on Plaintiff GEICO Marine Insurance Company's ("GEICO") Motion for Judgment on the Pleadings [DE 14] and Defendant Charles Monette's Motion for Summary Judgment [DE 16]. Having considered the matter fully, and being otherwise sufficiently advised, GEICO's Motion for Judgment on the Pleadings [DE 14] will be denied and Monette's Motion for Partial Summary Judgment [DE 16] will be granted in part and denied in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On May 23, 2018, GEICO issued Monette a marine insurance policy ("the Policy") for a 1986 Creekmore Monohull Sailboat ("the boat"). [DE 1-1]. The policy period began on June 30, 2018 and ended on June 30, 2019. *Id.* On or about August 22, 2018, Monette filed an insurance claim for water damage to the boat, and a GEICO-hired surveyor reported the damage was caused by deterioration and found the boat was in poor condition and over insured at

$90,000.00. [DE 1, at 3-4; DE 14, at 1; DE 17-1, at 1-4]. On September 20, 2018, GEICO issued an endorsement, which became effective on October 5, 2018, amending the cruising limits of the boat from "Coastal and Inland waters of the U.S. and Canada" to "Port Risk Ashore." [DE 1-1, at 1-4]. The endorsement clarified, "This restriction provides no coverage for navigation, and coverage will only apply to the insured vessel while the boat is out of the water." *Id.* at 2.

On October 10, 2018, the boat was damaged by Hurricane Michael, and GEICO declared the boat to be a "constructive total loss." [DE 1, at 4-5]. In Monette's Answer [DE 6], he admits that at the time of the loss, "[T]he boat was afloat in its slip at Sun Harbor Marina in Panama City, Florida . . . ." [DE 6, at 2]. Following the storm, the Coast Guard demanded the boat be removed from the water immediately, and GEICO paid $9,000.00 to do so. [DE 1, at 5]. Since the boat was in the water at the time of the loss, GEICO found that the loss occurred outside the cruising limits and denied coverage for Monette's claim for property damage to the boat. *Id.*

On February 12, 2019, GEICO filed its Complaint [DE 1] seeking a declaration that the Policy provides no coverage for Monette's loss and a return of the $9,000.00 for salvaging the boat. *Id.* at 5-6. On March 27, 2019, Monette filed his Answer and Counterclaim [DE 6] requesting a declaration that GEICO's endorsement is void

and the loss of the boat was covered under the Policy and a judgment finding GEICO breached the insurance contract and Policy, violated Kentucky's Unfair Claims Settlement Practices Act, KRS 304.12-230, and acted in bad faith. Additionally, Monette claims he is entitled to punitive damages. *Id*.

On June 11, 2019, GEICO filed the present Motion for Judgment on the Pleadings [DE 14] seeking judgment only on the issue of coverage. Whether GEICO is entitled to recover the $9,000.00 GEICO paid to salvage the boat is not before the Court at this time. [DE 14-1, at 2 n.1]. The Court must also consider Monette's July 2, 2019, Motion for Partial Summary Judgment [DE 16], which asks the Court to find the endorsement GEICO relied on to deny coverage is void, and the damage to the boat is covered under the Policy. [DE 16, at 1].

## II. DISCUSSION

### A. GEICO'S MOTION FOR JUDGMENT ON THE PLEADINGS

GEICO moves for judgment on the pleadings under Fed. R. Civ. P. 12(c). [DE 14]. A motion for judgment on the pleadings requires the same "'standard of review employed for a motion to dismiss under Rule 12(b)(6).'" *Florida Power Corp. v. FirstEnergy Corp.*, 810 F.3d 996, 999 (6th Cir. 2015) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008)). "After the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Under such a motion, "'all well-

pleaded material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment.'" *Tucker*, 539 F.3d at 549) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). However, the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *Winget*, 510 F.3d at 581-82 (quoting *Mixon v. Ohio,* 193 F.3d 389, 400 (6th Cir. 1999)). "A motion brought pursuant to Rule 12(c) is appropriately granted 'when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.'" *Tucker*, 539 F.3d at 549 (quoting *Winget*, 510 F.3d at 582). "[W]hen determining whether a plaintiff is entitled to a Judgment on the Pleadings, such a judgment may be based on admissions by the Defendant under Fed. R. Civ. P. 8(b)." *Finisar Corp. v. Cheetah Omni, LLC*, No. 11-CV-15625, 2012 WL 6949236, at *1 (E.D. Mich. Dec. 10, 2012) (citing *Encompass Ins., Inc. v. Hagerty Ins. Agency, Inc.,* No. 08-337, 2009 WL 160776, at *6 (W.D. Mich. Jan. 22, 2009)).

In the present case, GEICO argues the pleadings show no factual dispute exists, so GEICO is entitled to judgment as a matter of law. [DE 14-1, at 3-4]. In support, GEICO cites to the Policy's "Cancellation" provision, which states the following:

4

> C. Cancellation
>
> 1. "You" may cancel this policy at any time by providing "us" with advance notification of the cancellation date.
>
> 2. Subject to the requirements of state law, "we" may cancel this policy by notifying "you" in writing before the date the cancellation is to take place. This cancellation notice will be mailed to "you" at the address shown on the Declarations Page, and proof of such mailing shall be sufficient proof of notification. Cancellation may be effective prior to the return of premium, if any. The return premium will be calculated on a pro-rate basis.

[DE 14-1, at 3 (quoting [DE 1-1, at 17])]. GEICO correctly asserts, "Kentucky law provides for cancellation of insurance policies upon strict compliance with the provisions of the insurance contract." *Id.* at 3 (citing *Goodin v. Gen. Acc. Fire & Life Assur. Corp.*, 450 S.W.2d 252, 255 (Ky. 1970)).

In *Goodin*, the Court of Appeals of Kentucky, the highest state court at that time, held the following:

> [I]f the contract contains the standard provision here present that upon a 'notice of cancellation mailed to the address of the insured stated in this contract, proof of mailing from the office of the insurer shall be sufficient notice,' proof of mailing from the office of the insurer is sufficient to sustain a finding that the notice was effective without proof that such notice was received by the insured and even though the insured denies receipt of the communication.

450 S.W.2d at 255-56 (citing 17 Couch on Insurance 2d, section 67:182; *Woodard v. Calvert Fire Ins. Co., Ky.*, 239 S.W.2d 267 (Ky. 1951); *American Fire and Casualty Company v. Combs, Ky.*, 273 S.W.2d 37 (Ky. 1954)). Like cancellations, an amendatory endorsement

5

prevails over any conflicting provisions of the policy because the endorsement is later in time. *See Goodin*, 450 S.W.2d at 256; *Hodgin v. Allstate Ins. Co.*, 935 S.W.2d 614, 615 (Ky. Ct. App. 1996).

Here, GEICO argues, "Under Kentucky law, Monette's Policy was validly modified when GEICO sent the Endorsement in compliance with the Policy provisions," and "Monette admits he received notice of the change in coverage and that the boat was outside the cruising limits at the time of the loss." [DE 14-1, at 4 (citing [DE 6])]. Monette disagrees, contending GEICO had no right under Kentucky law to unilaterally modify a material term of the Policy—specifically, the cruising limits—without Monette's authorization and consent, so the endorsement is void. [DE 15, at 4-8]. Monette does not dispute the fact that the terms of the Policy permit GEICO to unilaterally cancel the Policy upon notice to Monette. [DE 15, at 6 (citing [DE 1-1, at 17])]. However, Monette contends the Policy does not include a similar provision that would have allowed "GEICO to unilaterally modify the coverages or make other material changes to the Policy." *Id*.

In GEICO's Reply [DE 17], it argues, "[The cases cited by Monette] stand for nothing more than the proposition that parties *may* make modifications by mutual assent and, if they do, those modifications are enforceable." [DE 17, at 2 (citing *Continental Ins. Co. v. Simpson*, 294 S.W. 1048, 1049 (Ky. 1927); *Kentucky Farm Bureau Mut. Ins. Co. v. McMullin*, 280 S.W.2d 882, 883 (Ky. 1955))].

Additionally, GEICO asserts, "Kentucky law makes clear that GEICO could unilaterally terminate coverage for the boat as long as it complied with the notice provision in the Policy." *Id*. at 3 (citing *Hodgin*, 935 S.W.2d at 615 (citing *Goodin*, 450 S.W.2d 252)). Accordingly, the issue presently before the Court is whether GEICO could unilaterally modify the Policy without Monette's consent. To answer this question, the Court looks to Kentucky contract law for guidance.

While *Goodin* established that an endorsement, which is later in time than an original policy, prevails over conflicting provisions of the earlier policy, *Goodin* is distinguishable from the present case. In *Goodin*, the insured did not merely receive notification of the endorsement. Instead, following a divorce, the insured requested two endorsements transferring policies from his former wife to him as the named insured and accepted the policies as endorsed, so there was mutual assent between the parties. 450 S.W.2d at 254-56. Furthermore, based on the Court of Appeals of Kentucky's opinion in *Goodin*, whether there were endorsement or modification provisions in the relevant policies is not entirely clear. *Id*.

In *Hodgin*, the insurance company issued an amendatory endorsement modifying the underinsured motorist provision in an insurance policy. 935 S.W.2d at 615. The insured argued the endorsement was unilateral and unconscionable. *Id*. Citing *Goodin*,

7

the Court of Appeals of Kentucky disagreed, finding, "Certainly the amendatory endorsement, which appellants acknowledge they received, clearly advised them that a change was being made in the parties' original policy, and hence, served to validly modify the original terms of that policy." *Id*. (citing *Goodin*, 450 S.W.2d 252). As Monette points out, "the [*Hodgin*] decision does not disclose the terms and conditions of that policy and the extent to which unilateral amendments are permitted under the terms of that policy." [DE 15, at 7]. Moreover, the Court of Appeals of Kentucky's reliance on *Goodin* is misplaced. Specifically, in *Goodin*, the parties agreed to the endorsements, so *Goodin* does not support the *Hodgin* Court's finding that the policy was validly modified simply because the insured received the endorsement.

Under Kentucky law, "'the parties must enter into a meeting of the minds in order to form an enforceable contract.'" *Ky. Natural Gas Corp. v. City of Leitchfield ex rel. Its Utility Comm'n,* No. 2008-CA-000789, 2011 WL 4501976, at *5 (Ky. Ct. App. Sept. 30, 2011) (quoting *Olshan Foundation Repair and Waterproofing v. Otto,* 276 S.W.3d 827, 831 (Ky. Ct. App. 2009)). Like the formation of a contract, a contractual modification requires mutual assent. *See Adler v. Elk Glenn, LLC*, No. 12-85-ART, 2013 WL 6632057, at *8 (E.D. Ky. Dec. 17, 2013) (citing *Ky. Natural Gas Corp.*, 2011 WL 4501976, at *5 ("There being no mutual assent, there could be no modification of the contract . . . .")).

In addition to mutual assent being required to modify a contract under Kentucky law, it is also a generally established requirement of contract law, as explained in *American Jurisprudence*, which states the following:

> A modified contract is essentially a new contract which must pass the same tests and scrutiny that apply to the initial determination of whether an enforceable agreement exists. A valid modification of a contract must satisfy all the criteria essential for a valid original contract, including offer, acceptance, and consideration.
>
> A modification of a contract requires the mutual assent of both, or all, parties to the contract. Hence, one party to a contract may not unilaterally alter its terms without the assent of the other party. Mutual assent is as much a requisite element in effecting a contractual modification as it is in the initial creation of a contract. Furthermore, a valid contract modification requires mutual assent to the meaning and conditions of the modification and the parties must assent to the same thing in the same sense. A valid modification of a contract requires a meeting of the minds of the parties, which must be spelled out, either expressly or impliedly, with sufficient definiteness.

17A Am. Jur. 2d *Contracts* § 496 (2019) (footnotes omitted).

In the present case, as previously discussed herein, GEICO attempted to unilaterally modify the Policy with an endorsement that amended the cruising limits. The fact that Monette was notified that the cruising limits were going to be amended is immaterial. A contract cannot be modified by notification alone. Instead, both parties must assent to the modification. Since Monette did not assent to the endorsement, it was an invalid contract modification and, thus, void. For that reason, GEICO is

not entitled to judgment as a matter of law, and the Court will deny GEICO's Motion for Judgment on the Pleadings [DE 14].

### B. MONETTE'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Monette moves for partial summary judgment, asking the Court to find that the endorsement GEICO relied on to deny coverage is void and the damage to the boat is covered under the Policy. [DE 16, at 1]. Having found the endorsement to be void as a matter of law, there is no genuine dispute as to any material fact regarding the endorsement's validity, so the Court will grant Monette's Motion [DE 16] in part. But the Court must now determine whether Monette is also entitled to partial summary judgment on the issue of coverage.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated another way, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S.

at 252. "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pennington,* 553 F.3d at 450 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

The Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." *Pennington v. State Farm Mut. Automobile Ins. Co.,* 553 F.3d 447, 450 (6th Cir. 2009)

11

(citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id*.

In the instant case, the Court finds the endorsement is void. However, the endorsement is not the sole reason GEICO seeks a declaration that the boat was not covered under the Policy. In addition to GEICO's flawed argument that Monette breached the cruising limits imposed by the endorsement, GEICO also argues the boat was not covered under the Policy for the following reasons:

> b. Monette breached the implied warranty of seaworthiness by failing to maintain the boat in a seaworthy condition;
>
> c. Monette breached Condition J of the Policy as well as the maritime doctrine of utmost good faith, or *uberrimae fidei*, by misrepresenting the value of the boat to GEICO;
>
> d. The damage to the boat during the hurricane was caused directly or indirectly by wear and tear and/or the deteriorated condition of the boat or its equipment.

[DE 1, at 5-6].

In GEICO's combined Reply in Support of Plaintiff's Motion for Judgment on the Pleadings and Response in Opposition to

Defendant's Motion for Summary Judgment [DE 17], GEICO asserts, "[T]he surveyor found that the boat was over-insured and not worth nearly the $90,000.00 agreed value, suggesting Monette made misrepresentations to GEICO at the inception of the Policy." [DE 17, at 2 (citing [DE 17-1])]. While not entirely misleading, GEICO's description of what the independent surveyor found is exaggerated. In fact, the surveyor's report does not state that the boat was "not worth nearly the $90,000.00 agreed value." *Id*. Instead, the surveyor found, "The vessel is [in] overall poor condition and appears not to be valued at the insured limit of $90,000.00." [DE 17-1, at 2].

The surveyor's report supports a finding that the boat suffered damage from deterioration. *Id*. at 3. However, the surveyor's report is dated August 30, 2018, and the hurricane did not occur until October 10, 2018. In a footnote, GEICO states, "Under both Kentucky and maritime law, misrepresentations or omissions of material facts by an insured void the insurance policy." [DE 17, at 2 n.2 (citing *Proctor v. GEICO Gen. Ins. Co.*, 360 F. Supp. 3d 626, 633 (E.D. Ky. 2019); *HIH Marine Servs., Inc. v. Fraser*, 211 F.3d 1359, 1362 (11th Cir. 2000))]. Monette contends the surveyor's report is unverified, fails to show that Monette misrepresented the condition, seaworthiness, or value of the boat, and does not create a genuine issue of material fact regarding the

seaworthiness or value of the boat. [DE 19, at 5]. *Id*. The Court disagrees.

When the evidence is construed in GEICO's favor, at least some of the damage found on the boat after the hurricane could be attributed to the deterioration previously found by the surveyor, which is plainly visible in the pictures attached to the surveyor's report. The surveyor's report alone may not establish that Monette either failed to maintain the boat in a seaworthy condition or made a misrepresentation in his application for coverage, but it does create a genuine dispute of material fact for a jury. Therefore, the Court will deny Monette's Motion for Partial Summary Judgment [DE 16], insofar as it pertains to Monette's alleged entitlement to coverage under the Policy.

### III. CONCLUSION

Since there was no mutual assent between the Parties, the amendatory endorsement to the Policy is void, GEICO's Motion for Judgment on the Pleadings [DE 14] must be denied, and Monette's Motion for Partial Summary Judgment [DE 16] shall be granted in part, insofar as it pertains to the endorsement issue. The cause of the damage to the boat and whether Monette failed to maintain the boat and accurately describe its condition are factual determinations that must be made by a jury, so Monette's Motion for Partial Summary Judgment [DE 16] shall be denied in part, insofar as it pertains to a determination on coverage. Accordingly,

**IT IS ORDERED** as follows:

(1) GEICO's Motion for Judgment on the Pleadings [DE 14] is **DENIED;** and

(2) Monette's Motion for Partial Summary Judgment [DE 16] is **GRANTED IN PART,** insofar as it pertains to the issue of whether the endorsement is void, and **DENIED IN PART,** insofar as it pertains to the issue of whether the damage to the boat is covered under the Policy.

This the 6th day of February, 2020.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge